# BALTIMORE CITY COURT.

Filed March 15, 1923.

ROCH JULIEN, USE, ETC.,
VS.
THE FEDERAL MUTUAL FIRE INSURANCE COMPANY OF BALTIMORE CITY.

SAME
VS.
THE CALVERT MUTUAL FIRE INSURANCE COMPANY OF BALTIMORE CITY.

*W. Hall Harris* for plaintiff.

*J. H. Richardson* and *Allan W. Rhynhart* for defendant.

FRANK, J.—

These two cases, by agreement of the parties, were tried together before the Court without a jury, upon agreed statement of facts. They are actions upon two fire insurance policies, each for $2,000, issued by the defendants in the two cases respectively. No question arises as to the execution and delivery of the policies, the payment of the premiums, the facts of loss and of coverage, and that the plaintiff is entitled to recover, if at all, the full face amount of both policies.

Two defenses are interposed:

First: That the plaintiff failed to file formal proofs of loss within sixty days after the date of said loss, as required by both policies.

Second: That the warranty in what is known as the "clear space clause" of both policies was broken and that, as a consequence, the policies by the

express terms of the warranty became null and void. The language of these "clear space clauses" is fully quoted in paragraph 14 of the agreement and will not be set out here at length.

First: I find sufficient evidence of waiver of the requirement that formal proofs of loss be filed to require the submission of the question of waiver to the Court sitting as jury.

By the agreement above referred to it appears: That the plaintiff promptly notified the defendants that he had suffered a total loss; that defendants sent their adjuster to investigate and report on the said loss and that the adjuster reported to the defendants that there was a violation of the "clear space clause"; that demand was made, immediately after the fire, for the full face amount of each of the policies of insurance; that about eight days before the institution of these actions, plaintiff's counsel visited the offices of the said defendants and made demand for the payment of the said policies, but that said demand was refused by officers of said defendants for the reason that the policies were vitiated under the "clear space clause" of the policies; that no reference was made at that time to the absence, or lack of filing, of proofs of loss, nor had any such reference been made to the plaintiff, his counsel or agents, until some considerable period of time after these suits had been brought.

The defendant's third prayer asks the Court to rule as matter of law that under the uncontradicted evidence in this case, the plaintiff did not furnish proofs of loss as required by the policies and that there is no evidence legally sufficient to show any waiver by the defendants of this requirement.

It is true that no formal proofs of loss were ever furnished as required by the policies. and unless the conduct of the defendants above described amounted to legally sufficient evidence of a waiver this prayer should be granted. About eight days before the commencement of these actions, the defendants absolutely denied all liability, but solely on the ground that the warranty of the "clear space clause" had been broken, and neither then nor at any time before was any reference made to the failure to file proofs of loss. This being agreed to in the case, the Court must decide as a matter of

law as to whether such conduct, together with the other acts above recited amounted to evidence of a waiver. In many jurisdictions, it is held that there can be no waiver unless the circumstances create an estoppel on the part of the insurer to set up that no proofs of loss have been filed. Where this rule prevails, the assured must show that he has been prejudiced by the conduct of the insurer, i. e., that but for such conduct he would have filed proofs in ample time. This rule necessarily involves the requirement that the conduct relied on as constituting the waiver must have occurred before the expiration of the stipulated period of time for the filing of proofs.

In Maryland (also in New York and Indiana and probably also in Missouri), estoppel is not a necessary element of waiver. The acts showing the intention of the insurer to waive may, therefore, occur after the period limited for the filing of proofs, since no prejudice to the insured need be shown. 4 Cooley's Briefs on Insurance, 3481, 3483, 3539.

A denial of liability by the insurer on other grounds than failure to file proofs of loss is generally held to amount to such a waiver. 4 Cooley, 4531; Germania Fire Ins. Co. vs. Pitcher, 160 Ind. 392.

And such a denial will be sufficient where no reason therefore is given. Allegre vs. Md. Ins. Co., 6 H. & J. 408.

Some of the authorities hold that such denial will be effective even though made for the first time in the pleadings or even at the trial of the case. 4 Cooley, 3541.

As stated above, in Maryland estoppel is not a necessary element of waiver. Therefore, the fact that the denial of liability took place subsequent to the expiration of the sixty days' period does not preclude the possibility of a waiver. Under the agreed facts in this case, evidence of such a waiver is afforded. Caledonan Ins. Co. vs. Traub, 80 Md. 214, 223, citing Fireman's Ins. Co. vs. Floss, 67 Md. 417.

In determining whether there has been a waiver, the facts must be submitted to the jury, but the Court instructs the jury as to the legal effect of their finding such facts. Sumwalt

Co. vs. Knickerbocker Co., 112 Md. 437, 444, and cases cited.

The defendant's third prayer is, therefore, refused.

Second: The defendants further contend that the warranty in the "clear space clause" of the policies was broken and that the policies were thereby rendered null and void. This clause in effect requires that a continuous clear space of 300 feet be maintained between the property insured and any wood-working or manufacturing establishment or dry kiln. Such a clause is a valid continuing warranty and a breach thereof avoids the policy. Rife vs. Lumber Underwriters (CCA 6th Circ. 1913), 204 Fed. Rep. 32, 36; Liverpool & L. & G. Ins. Co. vs. Richardson Lbr. Co. (Okla. 1922), 69 Pac. Rep. 938; The Michigan Shingle Co. vs. The London and Lancashire Fire Ins. Co., 91 Mich. 441 (1892); Gough vs. Jewett (1898), 52 N. Y. Supp. 707; Hartford Fire Ins. Co. vs. Post (Tex. 1901), 62 S. W. Rep. 140.

By the agreed facts in this case, it appears that the lumber insured and destroyed at its nearest point was about 550 feet away from a saw mill. After the policies in suit were issued, but before the fire, a building was erected, at no point nearer to the saw mill than 400 feet. The dimensions of this building were 50 feet by 50 feet and its nearest side was 100 feet from said lumber. At the time of the fire (June 26th, 1920), this building, although roofed, had never been used. It was intended to be used as a planing mill for the preparation or milling of lumber. There remained a lot to do before the building could be so operated, as it was necessary to assemble the machinery and put it in working order. There was no power in this building. In fact, it was not operated at all until April, 1921, and then only in a small way and was finally put in regular use in August, 1921.

The saw mill clearly had a continuous clear space of more than 300 feet (400 feet in fact) between it and the property insured and there was, therefore, no breach of warranty unless the building, uncompleted at the time of the fire, was itself "a wood-working or manufacturing establishment or dry kiln," within the meaning of the covenant. Its destined use was certainly embraced within the language of the covenant. In its condition at the time of the fire, it just as certainly did not come within that language. I am of the opinion that it must be judged by its actual and not by its intended use. The only authority to which I have been referred which throws any light on this question is the case of Smith vs. Fire Ins. Co. (1918), 175 N. C. 314. While it is not necessary to adopt all the views expressed in that case, to the extent that it bears on the question now being discussed, I think that the reasoning of the Court is sound. A warranty similar to that involved in this case was being construed. The Court says:

"The term (wood-working establishment) * * * when considered in connection with the nature of the contract and the danger sought to be provided against * * * reasonably means an establishment working wood at the time of the injury complained of. The purpose of the condition, requiring a clear space of 200 feet (300 feet in the case at bar) was to decrease the risk and the danger apprehended was the escape of fire from the wood-working establishment. The parties had in mind a live plant and not a dead mill, and the contract should be given a reasonable construction to conform to its spirit. Suppose the mill had been located and abandoned without being operated a day, would it not be 'sticking in the bark' to say there could be no recovery because the lumber was within 200 feet of a mill which had never had fire in it, and when there was no accumulation of sawdust or any other inflammable matter * * *?"

For these reasons I must refuse defendant's first and second prayers.

I shall refuse all the plaintiff's prayers, because in my opinion they withdraw from the Court as jury the right to find a waiver under the instruction of the Court. As I read the Maryland decisions, the Court can rule as matter of law that no legally sufficient evidence of waiver has been offered, as in Spring Garden Mutual Ins. Co. vs. Evans, 9 Md. 1, 20. Where, however, the question as to what affirmatively amounts to a waiver depends upon facts and circumstances resting in parol evidence, the question of waiver *vel non* is one for the jury under instructions from the Court indicating to them the portions of the evidence from

which they may *infer the waiver*. Sumwalt Co. vs. Knickerbocker Co., 112 Md. 437, 444.

I have framed an instruction in lieu of plaintiff's prayer.

Under these instructions I find a verdict for the plaintiff and fix the damages at $2,000 in each case.